UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

LESANN MCENROE,

                Plaintiff,

   vs.

MICROSOFT CORPORATION, a
Washington State
corporation,

              Defendant.

NO.  CV-09-5053-LRS

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

    BEFORE THE COURT is Plaintiff's Partial Summary Judgment, Ct.
Rec. 54); and Defendant's Summary Judgment, Ct. Rec. 117.  On November
10, 2010, a telephonic oral argument was held, with Plaintiff
participating pro se, and Kevin Hamilton, Esq. participating on behalf
of Defendant Microsoft Corporation ("Microsoft"). The Court took the
motions under advisement at the conclusion of the hearing.

## I.   BRIEF BACKGROUND

    Plaintiff Lesann McEnroe is a current Human Resources ("HR")
employee of Microsoft who handles administrative support for
recruiters. Plaintiff alleges that she has a disability rendering her
unable "to work at or travel to the Microsoft campus" or to attend any
work-related functions.  She attributes her disability to panic
disorder, agoraphobia, major depression, post-traumatic stress

ORDER - 1

disorder, irritable bowel syndrome, and a host of similar conditions.

Microsoft has permitted Plaintiff to work from home full-time for several years in Kennewick, Washington, which started before she announced she was disabled. According to Plaintiff, the specially tailored accommodation works well for her and generally has been successful in enabling her to perform her current role of HR staffing associate.

Plaintiff brought a suit for discrimination against Microsoft alleging that it has declined to consider her for several other, higher level positions within the company. Microsoft maintains that these higher level positions, however, require employees serving in these positions to be present in Redmond, be able to travel, and meet others in person, the latter impromptu at times.

## II.  DEFENDANT MICROSOFT'S SUMMARY JUDGMENT

On December 11, 2009 the Court dismissed six of the claims in Plaintiff's Complaint for failure to state claims upon which relief could be granted. Ct. Rec. 24. On March 10, 2010, the Court dismissed eight more claims in Plaintiff's original Complaint, which Plaintiff had removed from her Amended Complaint (Ct. Rec. 29) filed on January 13, 2010. Ct. Rec. 35. What remains in this case are twelve claims consisting of somewhat overlapping allegations for failure to accommodate, disparate treatment, and retaliation.

### A.    (5) Failure to Accommodate Claims (1, 3, 4, 8, 10)

Plaintiff brings five failure to accommodate claims under state and federal law. Four claims are premised on her applications for various higher level positions at Microsoft. The fifth claim asserts

ORDER - 2

that Microsoft failed to accommodate her alleged disability because it would not provide her a $4,000 annual "home office stipend" to cover living expenses such as her electricity and home cleaning expenses in addition to business expenses.

On June 17, 2008, HR director Tracy Turman (Plaintiff's second-level manager) posted a Business Analyst position opening. On June 27, the position was offered to Meghan Manring. On June 30, Manring accepted. Plaintiff first expressed interest in the position after Manring was offered and she had accepted the offer. When Plaintiff contacted Turman about the position, Turman indicated the role required a Redmond-based resource given its responsibilities for Redmond-based business clients.

Turman indicated her understanding that moving to Redmond was not an option for Plaintiff and asked Plaintiff to correct her if she was wrong. Plaintiff confirmed that she could not move to Redmond and asserted that she had to work remotely due to a disability.

In July 2008, Kathy DeCaprio posted a level 59 Reporting Analyst position (Plaintiff was Level 57). On July 23, 2008, Plaintiff applied for the position and sent DeCaprio an email in which she stated that she worked remotely because of a disability. DeCaprio responded by informing Plaintiff that the position was Redmond-based and thus that she was only considering Puget Sound-based applicants. DeCaprio had received expressions of interest from other remote candidates in North Dakota and India, and had told them the same thing. DeCaprio interviewed candidates able to work in Redmond. On October 6, 2008 DeCaprio made an offer to one such candidate who has,

ORDER - 3

in fact, needed to work from Redmond.

On August 21, 2008, Plaintiff applied for a Staffing Associate ("SA") position reporting to Simmi Bath.  Plaintiff informed Bath that she worked from her home office full-time due to a disability.  Bath told Plaintiff that while this SA position could accommodate some remote presence, it required onsite presence in various Microsoft offices to, among other things, attend regular meetings and provide onsite event coordination. Bath asked Plaintiff to let her know if she could perform these functions and, if so, that she would consider her for the position.  Plaintiff responded that "[d]ue to my disability, I am unable to travel or work on campus as you note." This job posting indicated that responsibilities for this particular SA position included, among other things, managing projects such as Blitz's, Brown Bags, and Job Fairs.

On April 18, 2008, Plaintiff sent an email to Mitra Azizirad expressing interest in a Redmond-based BA position reporting to Azizirad and indicating that she worked from home due to a disability. Senior HR Manager Joe McCallum contacted Plaintiff, listed the position's essential functions, and asked her if she could perform those functions.  The position required constant contact with Azizirad and her team because it serves as Azizirad's "right hand."  For example, the person who was hired for the role physically sits next to Azizirad's office to facilitate constant access to and frequent collaboration with Azizirad.

The Court finds Claims 1,3 4, and 10 fail because Plaintiff cannot show that an exclusive teleworking arrangement would have been

ORDER - 4

a reasonable accommodation for the positions sought because in-person attendance was an essential function of each of the three positions. Plaintiff's subjective belief as to what a job's essential functions are comprised of is not evidence. Under both the Washington Law Against Discrimination ("WLAD"), and the Americans With Disability Act ("ADA"), Plaintiff-employee must show, among other requisites, that she was capable of doing a job's essential functions. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532 (2003); *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). It is undisputed that Plaintiff was not "qualified" for each of the three positions because she could not or would not work onsite in Redmond, Washington at the Microsoft campus.

In the last failure to accommodate claim, Claim 8, Plaintiff alleges that Microsoft's refusal to provide her with a $4,000 annual stipend to cover living expenses is a failure to accommodate. In March 2009, Plaintiff's managers, Turman and Masonori Tokumoto, realized that Plaintiff had been submitting reimbursement requests related to her living expenses (such as her gas and trash bills), which were not and are not covered pursuant to company policy but which Tokumoto had been approving in error. Plaintiff was then informed that the expenses not covered by the flexible work arrangement policy would not be reimbursed in the future.

This claim fails-personal expenses, such as sewer bills or home cleaning services and the like are not reimbursable under Defendant's flexible work arrangement policy. Defendant Microsoft reimburses employees who work remotely some or all of the time for some home

ORDER — 5

office expenses.  Specifically, Microsoft covers the initial cost of setting up a home office and ongoing business expenses such as phone and broadband. Personal expenses such as sewer bills or home cleaning services are not reimbursable. Ct. Rec. #77, First Turman Decl., ¶¶ 22-23.  Plaintiff has not provided any case law or other authority that supports her theory.  While monetary payments of ordinary household expenses unconnected to performance of the requirements of employment may be desirable, they are not required as an accommodation of Plaintiff's perceived disability.  Under the circumstances of this case, Plaintiff is basically requesting what would be an increase in salary beyond that required by her ongoing employment relationship. This claim fails for the foregoing reasons.

   B.   <u>Disparate Treatment and Retaliation Claims (Claims 2,5,11)</u>

   Plaintiff asserts in her Second Claim, that Microsoft offered her a promotion in July 2008, which it then withdrew allegedly to discriminate against her on the basis of her disability and in retaliation for her complaints about "Turman's failure to accommodate plaintiff in consideration for the Business Analyst position which is the subject of the First Claim for Relief."

   The Court has considered the written and oral arguments and finds that this claim (Second Claim) fails because Plaintiff cannot establish a prima facie case of discrimination or retaliation and cannot rebut Microsoft's legitimate nondiscriminatory reasons for retracting Plaintiff's proposed promotion.

   The facts indicate Plaintiff was recommended and approved for a promotion by the person whom she accused of discrimination, Tracy

ORDER - 6

Turman, <u>after</u> Turman learned of Plaintiff's discrimination complaints.
The promotion was only rescinded after Plaintiff repeatedly insisted
that she would no longer perform any duties beyond those specifically
required of her SA role.  The Court finds Plaintiff cannot demonstrate
that she was performing to Microsoft's legitimate expectations for a
Level 58 role.  Plaintiff's repeated resistance to performing Level 58
responsibilities raised serious concerns about her willingness to
perform the heightened responsibilities of the Level 58 role or to act
as a team player.  Based on Plaintiff's placement of conditions upon
any promotion that she might receive (that she be given a raise, a
bonus and a specific title), she can provide no proof that even if the
promotion were to have been offered that it would have been accepted
by her in accord with the employer's original terms.  Plaintiff cannot
show that an action was adverse when there is no evidence that the
action would have affected the terms and conditions of her employment.

Additionally, Plaintiff cannot present evidence that similarly
situated employees were treated differently than her.  Finally, except
for Plaintiff's bare speculation, the record is devoid of any evidence
of discriminatory intent.

As for the claim of retaliation, Plaintiff fails to carry her
prima facie burden.  To establish a prima facie case of retaliation
under the ADA or the WLAD, a plaintiff must show:

(1) that she engaged in protected activity;

(2) the employer subjected her to an adverse employment decision;
and

(3) a causal connection between the protected activity and the

ORDER - 7

employer's action.

*Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009);

*Davis v. W. One Auto. Grp.*, 140 Wn. App. 449, 460 (2007) (same).

Plaintiff fails to meet her burden because she cannot show:

(1) that she was subjected to an adverse employment action; or

(2) a causal connection between the alleged protected activity
and the promotion decision.

Plaintiff simply presents her subjective belief that once she had
made an initial complaint with the U.S. Equal Employment Opportunity
Commission (EEOC), all actions taken by Microsoft were necessarily
motivated by a discriminatory intent or retaliatory animus.  The mere
fact that the proposed promotion was later withdrawn hardly
establishes that the reason for its withdrawal was Plaintiff's
protected conduct.  Even assuming that Plaintiff had established a
prima facie case of discrimination and/or retaliation, Microsoft had a
legitimate, nondiscriminatory reason to withdraw the pending
promotion.  The Second Claim fails for these reasons.

Plaintiff's Fifth Claim alleges that Microsoft's engagement in
the interactive process required by the ADA and WLAD constituted
discrimination and retaliation for filing her first EEOC charge.

On July 7, 2008, Sarah Kuerner referred Plaintiff to her Benefits
Manager, Deja Linet, to discuss her disability and potential
accommodations.  On July 9, 2008, after Plaintiff contacted her, Linet
engaged in an interactive dialogue with Plaintiff and, following
Microsoft's processes, asked Plaintiff to have her health care
provider complete an Accommodation Request outlining the medical need

ORDER - 8

for her request and any restrictions.  On July 18, 2008, Plaintiff submitted an Accommodation Request that included a signed release authorizing her general practitioner, Dr. David Merkley, to release health care information to Microsoft to enable Microsoft to determine whether and how Plaintiff's medical condition affected her ability to perform her job and/or whether any accommodations were required. Based on Plaintiff's continued application for positions requiring a Redmond presence and her representations that she could not engage in "work on campus," or face-to-face contact of any kind, Linet sought clarification from Dr. Merkley as to what medical limitations on Plaintiff's ability to perform her job she had and how Microsoft could accommodate those limitations.  Plaintiff contends this inquiry was illegal.  The Court disagrees.

The disparate treatment claim and retaliation claim fail for various reasons but most obviously because Plaintiff did not suffer an adverse employment action here.  Plaintiff continued to work from home under a 10-hour-a-day work restriction after the inquiry.  Plaintiff cannot show that Microsoft's engagement in the interactive process would dissuade a reasonable employee from making a charge of discrimination.  Plaintiff fails to provide any evidence of a causal link between Plaintiff's EEOC charges and Microsoft's inquiry.  In the face of Plaintiff's repeated applications for Redmond-based positions and her representations that she could not work in Redmond, Microsoft engaged in the interactive process to seek clarification from her health care provider.  Microsoft had a nondiscriminatory reason for making the inquiry and engaging in the interactive process under the

ORDER - 9

ADA and the WLAD - both of which permit inquiries as to whether an employee can perform job-related functions. 29 C.F.R. § 1630.14; *see also* WAC 162-22-090.

Plaintiff's Eleventh Claim appears to assert both a discrimination and retaliation claim premised on her belief that Mr. Kort informed HR Manager Joe McCallum that Plaintiff worked at home because of a disability.  This claim fails from both the disparate treatment and retaliation angles because Plaintiff attributes discriminatory and/or retaliatory intent to Kort, and the undisputed record shows, and Plaintiff does not dispute, that Kort did not disclose any information regarding Plaintiff's disability to McCallum.

C.    Failure to Investigate Claims (Claims 6,7,9, 12)

Plaintiff claims that Defendant's failure to investigate various situations expounded in Claims 6, 7, 9, and 12 was both discrimination and retaliation.  Even if there were competent evidence of the basic factual predicates underlying Plaintiff's failure to investigate claims, she has failed to make out a prima facie case of discrimination or retaliation for each claim.  A "failure to investigate" is not an adverse employment action for purposes of a discrimination claim.  Even had Microsoft (through its employees) actually ignored Plaintiff's complaints, that mere failure to investigate itself did not adversely affect the terms or conditions of Plaintiff's employment.  At an even more basic level of analysis, a "failure to investigate" claim is simply uncognizable.  These claims fail and must be dismissed.

**III. CONCLUSION**

ORDER - 10

For the reasons stated above, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary judgment, **Ct. Rec. 117,** is **GRANTED. All remaining claims in Plaintiff's Amended Complaint are hereby dismissed with prejudice.**

2. Plaintiff's Partial Summary Judgment Motion, **Ct. Rec. 54**, is **DENIED,** based on the ruling above in Defendant's motion for summary judgment.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward a copy to pro se plaintiff, enter judgment consistent with this order, and **CLOSE FILE.**

DATED this 18th day of November, 2010.


*s/Lonny R. Suko*

_____
            LONNY R. SUKO
CHIEF UNITED STATES DISTRICT JUDGE

ORDER - 11